# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CR-22-119-R |
| | ) | |
| WARSAME ABIRAHMAN ALI, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant Warsame Abirahman Ali's Motion to Sever (Doc. No. 60). The Government responded in opposition to the Motion. (Doc. No. 63). Having considered the parties' filings, the Court DENIES the Motion for the following reasons.

On January 27, 2022, Defendant Ali and co-defendant Daud Hassan Jabril were subjected to a traffic stop in Oklahoma City which led to the discovery of fentanyl pills under the front passenger seat. (Doc. Nos. 60, at 2; 63, at 1-2). Mr. Ali was driving the vehicle at the time; Mr. Jabril was the passenger. (Doc. No. 60, at 2). The Defendants were charged jointly with: (1) drug conspiracy in violation of 21 U.S.C. § 846; and possession of fentanyl with intent to distribute, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Doc. No. 1). Defendant Ali moves to sever the joint trial.

Ali asserts that if the trial is not severed, his rights under the Fifth Amendment's Due Process Clause and Sixth Amendment's Confrontation Clause will be denied, he will be unable to fully cross-examine or present an individual defense, and there will be a high risk of failure to properly instruct the jury on the admissibility of evidence as to each

Defendant. (Doc. No. 60, at 2-3). Moreover, Ali anticipates that he and Jabril "could present mutually exclusive, not just antagonistic, defenses" at trial, and that Jabril "may be forced to adopt a defense that concedes many of the Government's allegations as being true" which creates "the potential for spillover prejudice" that may "improperly hamper Mr. Ali's defense." (Doc. No. 60, at 7).

The Federal Rules of Criminal Procedure allow for joinder if the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). If joinder "appears to prejudice a defendant or the government," however, "the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). The Tenth Circuit recognizes "a presumption in a conspiracy trial that coconspirators charged together preferably should be tried together." *United States v. Pursley*, 577 F.3d 1204, 1215 (10th Cir. 2009); *see also United States v. Scott*, 37 F.3d 1564, 1579 (10th Cir. 1994) (recognizing that in a conspiracy trial where the "evidence overlaps and the offenses arise from the same series or acts or transactions," joinder is favored).  Accordingly, the Tenth Circuit has provided a three-step process to assist courts in considering a defendant's motion to sever:

> First, it must determine whether the defenses presented are "so antagonistic that they are mutually exclusive." *United States v. Peveto*, 881 F.2d 844, 857 (10th Cir. 1989). Second, because "[m]utually antagonistic defenses are not prejudicial per se," a defendant must further show "a serious risk that a joint trial would compromise a specific trial right ... or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Third, if the first two factors are met, the trial court exercises its discretion and "weigh[s] the prejudice to a particular defendant caused by joinder against the obviously important considerations

2

of economy and expedition in judicial administration." *Peveto*, 881 F.2d at 857.

*United States v. Pursley*, 474 F.3d 757, 765 (10th Cir. 2007).

The potential for antagonistic defenses does not provide an adequate basis for severing trials; the defenses must be mutually exclusive. *United States v. Dirden*, 38 F.3d 1131, 1141 (10th Cir. 1994). To be considered "mutually exclusive," the "conflict between the defendants' defenses must be such that the jury, in order to believe the core of one defense, must *necessarily* disbelieve the core of the other." *United States v. Jones*, 530 F.3d 1292, 1304 (10th Cir. 2008) (internal quotation marks and citation omitted) (emphasis in original). Multiple defendants' claims of innocence alone do not amount to mutually exclusive defenses. *See Dirden*, 38 F.3d at 1141 (affirming district court's denial of motion to sever when multiple defendants claimed that "the firearm and narcotics were not his").

Although he acknowledges that Jabril's defense is unknown, Ali asserts that the Government has indicated that "the two defendants . . . may have defenses that are not just antagonistic, but are mutually exclusive and, therefore, prejudicial." (Doc. No. 60, at 5). The Government denies this assertion and states that it "does not believe the two defendants have mutually exclusive defenses." (Doc. No. 63, at 2 n.1). Considering that Defendant Ali is unaware of what Jabril's defense will be, the Court finds that Ali has not established that his defense is mutually exclusive. While Jabril may assert his innocence and allege that the fentanyl pills were Ali's, he could plausibly allege that a third-party placed the narcotics in the vehicle and that he and Ali were both innocent. Should that occur, the jury would not necessarily have to disbelieve the core of Ali's defense to believe Jabril's defense.

Nevertheless, even if the Court were to find that the defenses presented were mutually exclusive, the Court would decline to find that Defendant Ali was prejudiced.

One is prejudiced when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Edwards*, 69 F.3d 419, 434 (10th Cir. 1995) (internal quotation marks and citations omitted). The defendant bears the burden of demonstrating actual prejudice. *United States v. Hall*, 473 F.3d 1295, 1302 (10th Cir. 2007). "As a general rule, neither 'a mere allegation that defendant would have a better chance of acquittal in a separate trial' nor an argument that evidence against one defendant would have a 'spillover effect' on another defendant demonstrates prejudice." *Jones*, 530 F.3d at 1303 (quoting *United States v. Small*, 423 F.3d 1164, 1182 (10th Cir. 2005) (internal quotation marks omitted)).

Ali claims that if he is tried with co-defendant Jabril, he will be unable to present an individual defense or conduct full cross-examination. Specifically, he alleges that evidence of Jabril's prior drug dealing may be offered through cross-examination, though he does not specify whose cross-examination that would be, and that Jabril's counsel may discuss in closing arguments Ali's failure to testify at trial should Jabril choose to testify in his own defense. (Doc. No. 60, at 5). As to his argument regarding cross-examination, Ali has not demonstrated why he will be unable to conduct full cross-examination. Ali is free to cross-examine witnesses called by other parties, and, as the Government points out, Ali may choose to take the stand and testify that he had no knowledge of Jabril's involvement in

drug dealing.[1] (Doc. No. 63, at 7). As to the issue of whether Jabril's counsel might, during closing argument, comment on Ali's failure to testify in his own defense, the Court finds that this is not sufficient grounds for severance. *See United States v. McClure*, 734 F.2d 484, 490-91 (10th Cir. 1984) (stating that the Court was unaware of any decision—including the Fifth Circuit's decision in *De Luna v. United States* which raised the issue in dictum—that "has ever ordered a severance based upon" an inferred obligation "to comment upon a codefendant's invocation of the fifth amendment"); *United States v. Espinosa*, 771 F.2d 1382, 1409 n.35 (10th Cir. 1985) (recognizing that *McClure* rejected the argument "that severance was required to protect both [an] attorney's duty to comment upon the co-defendants' failure to testify and his co-defendants' conflicting right to remain silent during trial"). Defendant Ali will be able to present an individual defense and conduct full cross-examination of witnesses if tried jointly with co-defendant Jabril.

Ali also argues that there is a risk of "spillover" which could cause the jury to convict him because of the evidence introduced against Jabril. (Doc. No. 60, at 4). Specifically, Ali asserts that the Government will introduce evidence against Jabril at trial which has nothing to do with Ali, such as evidence of another drug transaction involving Jabril, cell phone correspondence between Jabril and unindicted co-conspirators, and additional drugs found on Jabril's person and in his luggage. (Doc. No. 60, at 3). Although the evidence against Jabril may be more damaging than the evidence against Ali, "a

---

[1] Ali has not asserted that co-defendant Jabril would testify in Ali's defense if the Court granted severance. *See e.g.*, *United States v. McConnell*, 749 F.2d 1441, 1445 (10th Cir. 1984) (setting out relevant factors for courts to consider when evaluating a "motion for severance upon a claim that [the defendant] needs a co-defendant's testimony").

defendant cannot obtain severance simply by showing that the evidence against a co-defendant is more damaging than the evidence against [him]self." *United States v. Wardell*, 591 F.3d 1279, 1300 (10th Cir. 2009) (internal quotation marks and citation omitted). Contrary to Defendant Ali's position, the Tenth Circuit has explained that limiting instructions are often sufficient to cure any prejudice. *United States v. Rodriguez-Aguirre*, 108 F.3d 1228, 1234 (10th Cir. 1997). Ali has not established that prejudice would result without severance.

The evidence against both Ali and Jabril overlaps, and the offenses arise from the same traffic stop whereby fentanyl was discovered. In a conspiracy trial where the "evidence overlaps and the offenses arise from the same series or acts or transactions," joinder is favored. *Scott*, 37 F.3d at 1579. To try each Defendant separately would hinder judicial administration and weigh against judicial economy as the Court and witnesses would be required to duplicate the trial.

Finally, as to Ali's argument that his rights under the Sixth Amendment's Confrontation Clause will be denied should he be tried with co-defendant Jabril, the Court declines to grant severance at this time. The Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Accordingly, "testimonial" hearsay is barred "unless (1) the declarant testifies at trial, . . . or (2) the declarant is unavailable to testify and was previously subject to cross-examination concerning the statement." *United States v. Faulkner*, 439 F.3d 1221, 1225 (10th Cir. 2006) (citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004)). Importantly, the Supreme Court has held that "statements in furtherance of

a conspiracy" are not testimonial in nature. *Crawford*, 541 U.S. at 56; *see also United States v. Patterson*, 713 F.3d 1237, 1247 (10th Cir. 2013) (concluding that because "statements were made in furtherance of a conspiracy, they are nontestimonial and present no Sixth Amendment problem.").

The Court is scheduled to conduct a *James* hearing regarding the admissibility of statements under the co-conspirator exception to the hearsay rule on April 4, 2023. During the hearing, if the Court finds evidence sufficient to establish a conspiracy existed and Ali was involved, co-conspirator statements in furtherance of the conspiracy will be deemed non-testimonial, and thus, admissible. Accordingly, at this juncture, Defendants are not entitled to severance.

For the reasons set forth herein, Defendant Ali's Motion to Sever (Doc. No. 60) is DENIED.

**IT IS SO ORDERED** this 14th day of March 2023.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE